IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 41683

| | | |
|---|---|---|
| PEGGY CEDILLO, | ) | Boise, December 2014 Term |
| | ) | |
|    Plaintiff-Respondent, | ) | 2015 Opinion No. 31 |
| | ) | |
| v. | ) | Filed: March 5, 2015 |
| | ) | |
| FARMERS INSURANCE COMPANY OF IDAHO, | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| | ) | SUBSTITUTE OPINION |
|    Defendant-Appellant. | ) | |
| | ) | The original Opinion issued March 3, 2015 is hereby Withdrawn. |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Lynn G. Norton, District Judge.

District court's order confirming the arbitration award on underinsured motorist policy, affirmed.

Elam & Burke, Boise, and Johnson Law Group, Spokane, WA for appellant. Jeffrey A. Thomson argued.

Runft & Steele Law, Boise, for respondent Jon M. Steele argued.

_____

BURDICK, Chief Justice

This appeal arose from an arbitration decision regarding Peggy Cedillo's underinsured motorist insurance policy with Farmers Insurance Company of Idaho ("Farmers") and damages for injuries she suffered in a motorcycle accident. After the arbitrator issued his final award, Farmers provided the arbitrator evidence that Farmers had already paid Cedillo the total amount of remaining damages. The arbitrator adjusted the award by subtracting Farmers' payment from the prejudgment interest Farmers owed Cedillo. The Ada County district court confirmed the arbitrator's amended award and awarded Cedillo attorney fees. On appeal, Farmers argues the district court should have modified the award because the arbitrator miscalculated prejudgment interest by applying Farmers' payment to the interest award. Farmers also argues on numerous grounds that Cedillo was not entitled to attorney fees in the district court. We affirm.

1

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On May 25, 2008, Peggy Cedillo was injured while riding as a passenger on Jon Steele's motorcycle. The motorcycle drifted to the right and hit a concrete barrier. Cedillo later married Steele.

Cedillo had an insurance policy with Farmers. That insurance contract obligated Farmers to compensate Cedillo for damages from an underinsured motorist ("UIM"). Steele had his own insurance with $100,000 in bodily injury coverage and $5,000 in medical payment coverage. On July 28, 2009, Cedillo sent Farmers a letter stating that she had settled her claim against Steele for his policy limits. Her letter then demanded her policy limits of $500,000 and asked that the claim be resolved in 30 days. On August 25, 2009, Farmers sent Cedillo a check for $25,000 with a letter that stated the check was Farmers' valuation of her UIM claim.

The matter went to binding arbitration under Cedillo's policy's requirement to arbitrate. Cedillo and Steele signed a contingent fee agreement on November 11, 2011. On March 1, 2012, Steele provided a notice of conflict disclosure to Farmers and the arbitrator. Arbitration began on November 20, 2012, and the parties completed the evidentiary portion the next day. The parties submitted written closing arguments and responses. Steele represented Cedillo in the arbitration.

The arbitrator issued an interim award on January 16, 2013. That award determined Cedillo suffered $121,700 in medical expenses and $135,000 in lost income, which equaled $256,700 in economic damages.[1] The arbitrator also awarded $150,000 in non-economic damages. This made the total award $406,700 without any adjustments. The parties had stipulated that after the arbitrator issued the interim award, he would determine any adjustments "for prejudgment interest, set offs or collateral sources and subrogation issues . . . ." The arbitrator was to include these adjustments in his final award.

The arbitrator considered the parties' proposed adjustments and issued the final award on April 29, 2013. That award reduced the interim award by (1) $105,000 that Steele's insurance already paid to Cedillo; (2) $180,000 for Farmers' $25,000 payment on August 25, 2009, and $155,000 payment on October 18, 2012; and (3) $21,367 for a pre-existing condition, an unsupported medical expense, and contractual adjustments. After these reductions, the adjusted interim award was $100,333.

---

[1] For clarity, this opinion approximated all numbers by rounding them to the nearest dollar.

The arbitrator also awarded prejudgment interest. The arbitrator determined that prejudgment interest began accruing on August 25, 2009, because on that date Farmers had sufficient information to investigate and determine its liability in a fair and accurate manner. The arbitrator calculated prejudgment interest by applying the statutory interest rate of 12% to the initial amount of $255,784. The arbitrator calculated the initial amount by reducing the interim award by $21,367 for contractual and other minor adjustments and by $25,000 for Farmers' payment on August 25, 2009. The arbitrator calculated interest on the initial amount from August 25, 2009, to October 18, 2012. Because Farmers paid Cedillo a $155,000 UIM payment on October 18, 2012, the arbitrator calculated the remaining prejudgment interest at 12% of $100,784 for October 18, 2012, to April 30, 2013. The arbitrator added these interest amounts together, which brought the final award's total prejudgment interest amount to $103,135.

Cedillo then filed a petition to confirm the arbitration award in the Ada County district court. That petition was also for the award of attorney fees. On May 20, 2013, Farmers filed with the arbitrator a motion to reconsider the prejudgment interest award accompanied by evidence that Farmers paid Cedillo $100,333 on March 25, 2013.[2] Farmers argued that the arbitrator should adjust the prejudgment interest to account for the fact Farmers paid Cedillo $100,333 before the arbitrator issued the final award. Farmers also argued that the arbitrator should recalculate the prejudgment interest on medical expenses, lost income, and general damages because Farmers could not mathematically calculate those amounts before the arbitrator issued his final award.

The arbitrator denied the motion on July 24, 2013, issuing the amended final award and a final order explaining his decision. The amended final award was $101,948. The arbitrator noted that on March 25, 2013, Farmers owed Cedillo the adjusted interim award and the outstanding prejudgment interest. He then took into account Farmers' March 25, 2013 payment of $100,333 and stated, "The payment was applied to the accrued prejudgment interest of $103,135[], leaving unpaid the award of $100,33[3] plus accrued interest of $2,80[3]." The arbitrator then gave Farmers credit for 36 days of interest for paying in March. The arbitrator noted that prejudgment interest continued to accrue on the unpaid $100,333 adjusted interim award after March 25, 2013.

---

[2] The arbitrator treated the part of Farmers' motion to reconsider that related to the March 25 payment's interest as a timely motion to modify.

The arbitrator explained that he could recalculate the award to include Farmers' March 2013 payment,[3] but had to deny the parts of Farmers' arguments that were based on a legal argument about how to apply prejudgment interest. He held controlling law mandated that he calculate prejudgment interest on the entire final award from the date that the insurer had sufficient information to investigate and determine liability. He determined that even if this decision was erroneous, he had no authority to correct the error because it was not a math error.

Farmers filed a second motion to reconsider and motion to modify on July 30, 2013. Farmers argued its March 2013 payment paid off the damage award, so there was no prejudgment interest award upon which to apply the payment. The arbitrator denied this motion on August 21, 2013. He held that the law entitled Cedillo to prejudgment interest regardless of whether the payment was applied to principal or interest. The arbitrator also found Farmers' request to apply the payment to principal instead of interest was not something he could modify under Idaho Code section 7-913.

On August 16, 2013, Cedillo filed an amended petition to confirm the arbitration award in the Ada County district court. This included an amended motion for the award of attorney fees. Farmers paid $101,948 to Cedillo on September 11, 2013. Cedillo applied $7,223 to outstanding prejudgment interest and $94,725 to the adjusted interim award. On September 18, 2013, Farmers filed a motion for modification and/or correction of the arbitration award and a motion to disallow costs and attorney fees.

The district court confirmed the arbitrator's amended final award on November 14, 2013. The court held that it lacked authority to modify the arbitrator's prejudgment interest award because all of Farmers' alleged errors were legal, which is not a ground to modify an arbitrator's award under Idaho Code sections 7-912 or 7-913. The district court also awarded Cedillo $121,007 in attorney fees, holding that Cedillo's fee request was not based on an illegal contract, that the attorney fee agreement did not preclude an award, and that Cedillo was entitled to fees for the payments Farmers made after she agreed to her contingency fee contract with Steele. The district court's judgment on December 11, 2013, also awarded Cedillo $5,608 for Farmers' unpaid balance on the adjusted interim award and prejudgment interest of $132. Farmers timely appealed.

---

[3] The arbitrator also noted that his final award had calculated interest until April 30, but the award was issued on April 29. He determined that this was also an amount that he could recalculate.

## II. STANDARD OF REVIEW

Judicial review of an arbitrator's decision is limited to examining the award to determine whether any of the grounds for relief in Idaho Code sections 7-912 and 7-913 are present. *Cranney v. Mut. of Enumclaw Ins. Co.*, 145 Idaho 6, 8, 175 P.3d 168, 170 (2007). An arbitrator's rulings as to questions of law and fact are binding unless one of those statutory grounds for relief applies. *Id.* Even where a reviewing court considers some of the arbitrator's rulings on questions of law to be error, the arbitrator's decision is nevertheless binding on the reviewing court. *Deelstra v. Hagler*, 145 Idaho 922, 924, 188 P.3d 864, 866 (2008). When we review a district court's decision to confirm an arbitration award, this Court uses the same standard of review as the district court. *Carroll v. MBNA Am. Bank*, 148 Idaho 261, 264, 220 P.3d 1080, 1083 (2009).

## III. ANALYSIS

Farmers appeals from the district court's confirmation of the arbitrator's amended final award and the court's award of attorney fees, arguing the district court erred in granting both.

### A. The district court properly confirmed the arbitration award.

Farmers argues the district court erred in denying Farmers' motion to modify the arbitration award because the arbitrator miscalculated prejudgment interest and the award was imperfect in a matter of form. Farmers argues the arbitrator miscalculated interest when he determined that Farmers was entitled to a 36-day interest credit for early payment, but subtracted Farmers' payment from the prejudgment interest instead of from the principal. Farmers contends that the proper calculation would have been to subtract Farmers' March 2013 payment of $100,333 from the adjusted interim award of $100,333. Farmers asserts that calculation would leave a balance of zero dollars owed on the adjusted interim award and give credit for the interest that no longer accrued after the March 2013 payment. Farmers argues this is consistent with the arbitrator's 36-day interest credit.

1. <u>Summary of the arbitrator's awards.</u>

The district court's confirmation of the arbitrator's amended final award came about based on the interplay of four of the arbitrator's decisions: (1) the January 16, 2013 interim award; (2) the April 29, 2013 final award; (3) the July 24, 2013 amended final award; and (4) the August 21, 2013 denial of Farmers' application to modify the amended final award. Understanding each decision is essential to address Farmers' arguments.

5

The arbitrator's interim award was $406,700. The arbitrator adjusted that award in his final award. The final award reduced the interim award by (1) Steele's insurance payment to Cedillo; (2) two payments from Farmers to Cedillo; and (3) other minor adjustments. All of these reductions left a $100,333 adjusted interim award. The arbitrator also awarded $103,135 in prejudgment interest, using the 12% statutory interest rate and taking into account Farmers' August 2009 and October 2012 payments. In sum, the arbitrator's final award added the $100,333 adjusted interim award to the $103,135 of prejudgment interest for a total final award of $203,468.

However, Farmers had paid Cedillo $100,333 on March 25, 2013. The arbitrator did not know about this payment at the time he made his final award. The arbitrator issued an amended final award that considered Farmers' March 2013 payment. The arbitrator applied Farmers' March 2013 payment to the accrued prejudgment interest of $103,135, leaving unpaid the $100,333 adjusted interim award plus $2,803 in accrued interest. The arbitrator gave Farmers credit for 36 days of interest for paying the award early. The total amended final award was $101,948.

Farmers filed a motion to modify, which the arbitrator denied on August 21, 2013. The arbitrator reasoned that applying Farmers' payment to the principal instead of interest "would leave [Cedillo] with a balance of accrued interest owed and no right to collect interest on the money owed." The arbitrator further explained:

> This application of the payment would deny [Cedillo] of the right under section 28-22-104 to collect interest at the rate of 12% per annum "on money after the same becomes due." The right to prejudgment interest is "money after the same becomes due." Thus, regardless of whether the payment was applied to principal or accrued interest, [Cedillo] is entitled to collect interest at the rate of 12% per annum on the amount that was due her on the date of the payment and thereafter until it is fully paid.

The arbitrator therefore still applied Farmers' payment to interest and did not change the 36-day credit.

The district court confirmed the arbitrator's decision. The court reasoned that it had no authority to modify the prejudgment interest because the arbitrator's decision to allocate Farmers' payment to prejudgment interest was an alleged legal error and not an evident miscalculation of figures under Idaho Code section 7-913.

2. Cedillo's jurisdictional challenges fail.

6

Cedillo asserts various procedural arguments that she contends bar Farmers from even raising the issue of a possible improper award.

Cedillo first argues that Farmers' September 18, 2013 motion to modify was untimely because Idaho Code section 7-913's 90-day time limit began to run when the arbitrator issued his final award on April 29, 2013, and expired on July 29, 2013. However, Farmers' motion was timely under section 7-913. Idaho Code section 7-913(a) states: "Upon application made within ninety (90) days after delivery of a copy of the award to the applicant, the court shall modify or correct the award" when the grounds listed in the statute exist. The statute requires that the application must be made within 90 days. The statute does not specify that "the award" refers to any specific award. Instead, the statute's plain language suggests that "the award" is simply the award a party seeks to modify. Here, Farmers petitioned to modify the amended final award in the district court on August 16, 2013, less than a month after the arbitrator issued his amended final award on July 24, 2013. Cedillo also sought to confirm the amended final award, not the April 2013 final award. Thus, Farmers' motion to modify was timely.

Next, Cedillo argues that res judicata mandates that the arbitrator's ruling be upheld. Res judicata's rule is that, in a second action between the same parties on the same claim, "the former adjudication concludes parties and privies not only as to every matter offered and received to sustain or defeat the claim but also as to every matter which might and should have been litigated in the first suit." *Wolfe v. Farm Bureau Ins. Co.*, 128 Idaho 398, 402–03, 913 P.2d 1168, 1172–73 (1996) (quoting *Magic Valley Radiology, P.A. v. Kolouch*, 123 Idaho 434, 436–37, 849 P.2d 107, 109–10 (1993)). However, because Idaho Code section 7-913 allows a party to apply for the district court to modify an arbitration award and that decision is reviewable, this action is not yet complete. Thus, res judicata does not apply.

Additionally, Cedillo argues that Farmers' previous payments render the prejudgment interest issue moot. An issue becomes moot when the issue does not present a real and substantial controversy that is capable of being concluded by judicial relief. *State v. Barclay*, 149 Idaho 6, 8, 232 P.3d 327, 329 (2010). However, the only way Farmers' payments make the appeal moot is if the arbitrator found Farmers had paid all amounts in full. Then Farmers would not have accrued additional interest and there would be no unpaid amount in dispute. Because Farmers accrued additional interest and still has unpaid amounts, the prejudgment interest argument is not moot. Thus, all of Cedillo's jurisdictional challenges fail. We therefore address

the main issue on appeal: whether the district court erred in declining to modify the arbitrator's award.

   3. <u>The arbitrator did not miscalculate the award and the award was not imperfect in form.</u>

Idaho Code section 7-913(a) provides that when a party timely applies to modify an arbitration award, a district court shall modify the award when:

> (1) There was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award;

> (2) The arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted; or

> (3) The award is imperfect in a matter of form, not affecting the merits of the controversy.

Cedillo contends that payment of a debt is properly applied first to accrued interest rather than the principal by relying on "the United States rule." That rule provides that partial payment of a debt will be applied first to unpaid interest and then applied to the principal debt. *Story v. Livingston*, 38 U.S. 359 (1839). Regardless of Cedillo and Farmers' arguments for and against this rule, applying the rule is a legal decision that we cannot modify unless one of the statutory grounds in Idaho Code section 7-913 is present. *Cranney v. Mut. of Enumclaw Ins. Co.*, 145 Idaho 6, 8, 175 P.3d 168, 170 (2007). Thus, we will not address this question. We will instead focus on whether the arbitrator's award contained a miscalculation or was an award imperfect in form.

Farmers challenges the district court's decision to confirm the award, arguing the arbitrator's error was an evident miscalculation of figures or an award imperfect in form. Farmers asserts the arbitrator made a math error when he failed to deduct payment from the proper number: the damage award. "The evident miscalculation of figures under Idaho Code § 7–913(a)(1) must be a mathematical error in calculating the amount of an award, not a legal error in the elements or measure of damages when making the award." *Id.* at 9, 175 P.3d at 171.

We have narrowly interpreted when a math error occurs. For example, this Court held an arbitrator did not make a math error when he allocated prejudgment interest to an insured's entire award without accounting for a deduction required under the insurance policy. *American Foreign Ins. Co. v. Reichert*, 140 Idaho 394, 401, 94 P.3d 699, 706 (2004). There, an uninsured motorist policy entitled the insured to benefits, but also provided that worker's compensation benefits would be deducted from the award. *Id.* at 397, 94 P.2d at 702. The arbitrator awarded interest

8

based on the total award, but then modified the award to base prejudgment interest upon the net award, which was the award minus the worker's compensation benefits. *Id.* at 397–98, 94 P.2d at 702–03. We held that the arbitrator could not modify the award because he made no math error in the initial award as the parties agreed in a pre-hearing scheduling order that he would not consider the deduction. *Id.* at 401, 94 P.3d at 706. Our decision in *Reichert* was a departure from *Schilling v. Allstate Ins. Co.*, 132 Idaho 927, 980 P.2d 1014 (1999). In *Schilling*, this Court held the district court properly modified an arbitration award to include prejudgment interest because the arbitrator failed to award prejudgment interest. 132 Idaho at 931, 980 P.2d at 1018. The Court reasoned that the arbitration panel's failure to award any interest left no question that the amount was not properly calculated. *Id.* However, we have explained: "Our opinion in *Reichert* impliedly overruled *Schilling v. Allstate Ins. Co.* If awarding prejudgment interest is not an 'evident miscalculation of figures,' the failure to award prejudgment interest likewise cannot be an 'evident miscalculation of figures.'" *Cranney*, 145 Idaho at 9, 175 P.3d at 171. An arbitrator miscalculates an award when he makes a math error in calculating the award's amount, not a legal error in the award's elements or measure of damages. *Id.* Hence, section 7-913(a)(l) does not permit an arbitration award to be modified for a non-math error that awards prejudgment interest.

Here, the arbitrator made a legal decision about how to apply a payment, which is not a math error. The arbitrator stated in his amended final award and his denial of Farmers' motion to modify that he decided to deduct payment from the interest amount. The arbitrator reasoned that applying Farmers' payment to the principal balance rather than interest "would leave the Claimant with a balance of accrued interest owed and no right to collect interest on the money owed." He reasoned that applying the payment to principal would deny Cedillo her right under section 28-22-104 to collect interest "on money after the same becomes due" and interest is "money after the same becomes due." He stated that "regardless of whether the payment was applied to principal or accrued interest, the Claimant is entitled to collect interest at the rate of 12% per annum on the amount that was due her on the date of the payment and thereafter until it is fully paid." This language indicates that the arbitrator made a legal decision that both interest and principal are "money as the same becomes due" and subject to interest. We cannot review an arbitrator's legal decision regardless of whether the legal decision is wrong. *Moore v. Omnicare, Inc.*, 141 Idaho 809, 815, 118 P.3d 141, 147 (2005). Therefore, we affirm the district court

9

because the alleged "math error" in this case was actually the arbitrator deciding to credit Farmers' payment to prejudgment interest.

Farmers urges that its challenge to the arbitrator's award is not similar to the challenges in *Cranney* and *Riechet*, but is instead similar to *TD Ameritrade, Inc. v. McLaughlin, Piven, Vogel Sec., Inc.*, 953 A.2d 726 (Del. Ch. 2008). However, in *TD Ameritrade* a Delaware court found math errors on the face of the award. 953 A.2d at 737. There, the court held that the arbitration panel miscalculated damages when a statute provided treble damages of three times compensatory damages and the arbitrators awarded a qualifying victim treble damages of four times her compensatory damages. *Id.* at 736. Unlike the miscalculation on the face of the award in *TD Ameritrade*, in this case the alleged error came from the arbitrator's decision to apply Farmers' payment to interest instead of principal. The arbitrator's award does not show he used an improper number in his interest calculation or counted Farmers' payment twice. Instead, the arbitrator decided where he would apply Farmers' payment. He simply put the payment towards interest instead of principal. Thus, the arbitrator made a legal decision and not a math error.

Farmers also argues that the award was imperfect in form because the arbitrator's 36-day interest credit is inconsistent with his decision to apply Farmers' payment to prejudgment interest. This Court has only described an award "imperfect in a matter of form" as a "procedurally imperfect award." *Landmark v. Mader Agency, Inc.*, 126 Idaho 74, 77, 878 P.2d 773, 776 (1994). In *Landmark*, this Court held that the district court improperly remanded an employer's award to the arbitrator because both the record and the award itself did not provide any basis for a claim that the award was imperfect in form. *Id.* Further, the employer's requested relief was the arbitrator reconsidering factual conclusions about the employee's liability, not the award's form. *Id.* Thus, *Landmark* indicates that for an award to be imperfect in form, the award must be procedurally imperfect and the record must have a basis for the claim of imperfection. As a general rule, courts have been reluctant to modify damage awards for awards imperfect in form because changing the amount awarded affects the merits. 8 Philip L. Bruner and Patrick J. O'Connor, Jr., *Bruner & O'Connor on Construction Law* § 21:215 (2002).

In this case, the award was not procedurally imperfect. In addition, finding the award imperfect would affect the merits by affecting Cedillo's award and total damages. The arbitrator made a decision to award a certain amount of damages and apply Farmers' payment to interest. Correcting the award in accordance with Farmers' wishes involves a legal choice to instead

10

apply the payment to principal. Thus, the award was not imperfect in form. Because the award was not imperfect in form and did not contain a math error, we hold the district court properly confirmed the award.

**B. The district court's award of attorney fees to Cedillo was proper.**

The district court awarded $121,007 in attorney fees to Cedillo under Idaho Code section 41-1839(1) and Cedillo's contingent fee agreement with Steele's firm. Farmers argues the district court erred in awarding Cedillo attorney fees because the award was based on an illegal contract and the contract did not provide for attorney fees in arbitration. Alternatively, Farmers argues the district court awarded the incorrect amount of attorney fees.

1. The contract was legal.

Farmers argues the district court abused its discretion by awarding attorney fees on an unenforceable, illegal contract. Cedillo argues that Farmers waived this issue because Farmers did not object to Steele's representation during the arbitration. "However, this Court may raise the issue of illegality *sua sponte.*" *Barry v. Pac. W. Const., Inc.*, 140 Idaho 827, 832, 103 P.3d 440, 445 (2004). Thus, we do not address whether Farmers waived the issue.

This Court must then address whether the contract was in fact illegal. Whether a contract is illegal is a question of law. *AED, Inc. v. KDC Investments, LLC*, 155 Idaho 159, 167, 307 P.3d 176, 184 (2013). An illegal contract is a contract that "rests on illegal consideration consisting of any act or forbearance which is contrary to law or public policy." *Id.* (quoting *Farrell v. Whiteman*, 146 Idaho 604, 609, 200 P.3d 1153, 1158 (2009). An illegal contract is void. *Barry*, 140 Idaho at 832, 103 P.3d at 445.

Farmers argues the contingent fee agreement is illegal because Cedillo sought attorney fees that were incurred because of her attorney's wrongful conduct in injuring his client and the contract specifically calculated fees based on the damages from that wrongful conduct. Farmers argues that courts should not award attorney fees to a wrongdoer like Steele because it is against public policy to allow a wrongdoer to benefit from his wrongful deeds.

The district court held that Cedillo's fee request was not based on an illegal contract. The court found that Cedillo's claim was her separate property and no evidence indicated that Steele caused the accident to initiate a lawsuit or that the contract itself was illegal.

The district court's reasoning is sound. This Court has held that a wife could pursue her tort remedy for damages arising out of a car accident where her husband was the tort-feasor.

11

*Rogers v. Yellowstone Park Co.*, 97 Idaho 14, 539 P.2d 566 (1974). The respondent in *Rodgers* argued that the wife's damages were her and her husband's community property, which barred the action. *Id.* at 16, 539 P.2d at 568. This Court replied that

> Implicit in respondent's argument is that the judicial system is inadequate to safeguard against collusion in tort actions between spouses. We reject this contention, for courts in this state presently weed out fraud and collusion in other cases not involving actions between spouses. We find nothing unusual or peculiar in interspousal suits to frustrate the capability of the judicial system to avoid or anticipate such abuses.

*Id.* at 17, 539 P.2d at 569. Similarly, in this case there is no reason to conclude the judicial system could not weed out any fraud and collusion between Cedillo and Steele. The district court addressed this when it stated that there was no evidence Steele caused the accident to initiate a lawsuit. Further, Cedillo's damages are her own separate property, as she incurred her cause of action before she married Steele. While Steele's firm recovers attorney fees based upon those damages, his law firm did not begin to represent Cedillo until 2011, long after the accident and Cedillo's initial injuries and claims. Thus, we hold in this case that the contract was not illegal as a matter of law because there was no evidence Steele caused the action to initiate the lawsuit and the lawsuit was Cedillo's own separate property.

2. The contract provided for attorney fees in arbitration.

Farmers argues that the district court erred in awarding attorney fees because the contingent fee agreement does not apply to fees incurred in arbitration. Farmers asserts that the fee agreement clearly and unambiguously bases the recovery of fees on monetary damages and not upon a judicial process for confirming an arbitration award. Farmers argues Cedillo's damage recovery came from the arbitration, and not the district court.

However, Farmers' interpretation is not consistent with the contract's plain language and the law. Cedillo and Steele's contingency fee agreement states that "legal fees will be paid only when, and if, you recover monetary damages on your claim in this matter, whether by settlement, or by decision of the district court." The district court held that Cedillo's recovery was allowable under the fee agreement because Cedillo had to file a petition to confirm the arbitration decision in district court. We agree with the district court's reasoning. After all, Cedillo had to file her petition to confirm in the district court in order to get a final judgment. Thus, the damages came "by decision of district court." Thus, we reject Farmers' argument that the contract did not provide for recovery of Cedillo's attorney fees.

3. The district court's amount of attorney fees was proper.

A district court's attorney fees calculation is within the district court's discretion. *Lettunich v. Lettunich*, 145 Idaho 746, 749, 185 P.3d 258, 261 (2008). The district court awarded Cedillo $121,007 in attorney fees, which was one-third of her recovered damages. One-third of attorney fees was the amount that Cedillo and Steele's firm agreed on in their fee agreement. Cedillo originally requested $129,341 in attorney fees, which included Farmers' $25,000 payment in 2009. However, the district court denied Cedillo's claim for one-third of Farmers' $25,000 payment because Farmers made that payment before Steele's law firm represented her. That decision is not in dispute.

Farmers instead disputes the arbitrator's decision to award fees based on all of the other damages. Farmers argues that the most it owes is one-third of the $100,333 adjusted interim award. Farmers disputes three parts of the district court's attorney fee award under Idaho Code section 41-1839(1). These are (1) the UIM benefits Farmers paid in October 2011; (2) the prejudgment interest in the final award; and (3) the accrued prejudgment interest based on the arbitrator's alleged math error. Cedillo argues that these issues were untimely.[4]

Idaho Code section 41-1839(1) provides

> Any insurer issuing any policy . . . of insurance . . . that fails to pay a person entitled thereto within thirty (30) days after proof of loss has been furnished as provided in such policy . . . or to pay to the person entitled thereto within sixty (60) days if the proof of loss pertains to uninsured motorist or underinsured motorist coverage benefits, the amount that person is justly due under such policy . . . shall in any action thereafter commenced against the insurer in any court in this state, or in any arbitration for recovery under the terms of the policy . . . pay such further amount as the court shall adjudge reasonable as attorney's fees in such action or arbitration.

In other words, a court can award reasonable attorney fees against an insurer when that insurer failed to pay within 30 days after the insured furnished the policy's required proof of loss.

---

[4] Cedillo argues Farmers waived its objections to the amount of attorney fees. She contends that I.R.C.P. 54(e)(6) requires an objection that follows I.R.C.P. 54(d)(6), which provides a motion to disallow costs must be filed within 14 days after the memorandum of costs is served. Indeed, this Court has held a party's failure to make a timely objection waives any objection to the award of attorney fees. *Conner v. Dake*, 103 Idaho 761, 761, 653 P.2d 1173, 1173 (1982). However, I.R.C.P. 54(d)(5) specifies that a party may serve its memorandum of costs "[a]t any time after the verdict of a jury or a decision of the court." Cedillo served her motion for attorney fees and costs on August 16, 2013, before the district court confirmed the award in November. Farmers filed a motion to disallow costs on September 18, 2013, specifying its objection to the early nature of Cedillo's petition. Farmers' objection was timely because the objection happened before the district court issued its decision to confirm the award.

First, Farmers argues the award was erroneously based on UIM benefits that Farmers paid within 30 days of receiving information sufficient to support payment. Specifically, Farmers argues its $155,000 payment on October 18, 2012, was within 30 days of a sufficient proof of loss because Cedillo did not provide Farmers any medical records, bills, or reports until September 18, 2012.

Farmers' arguments for a different proof of loss date for attorney fees echo its arguments to the arbitrator that the proof of loss date was when Cedillo submitted her bills because that was when Farmers could reasonably calculate her damages. An insured submits a sufficient proof of loss "when the insured provides the insurer with enough information to allow the insurer a reasonable opportunity to investigate and determine its liability." *Greenough v. Farm Bureau Mut. Ins. Co. of Idaho*, 142 Idaho 589, 593, 130 P.3d 1127, 1131 (2006). Here, the arbitrator found the proof of loss date was July 28, 2009, because that was the day Cedillo sent Farmers a letter that provided Farmers with enough information to obligate Farmers to investigate and determine its rights and liabilities in a fair and accurate manner. Farmers made the $155,000 payment in October 2012, more than three years after Cedillo's proof of loss date. The arbitrator rejected Farmers' suggestion that the proof of loss date changes with every new medical bill. There is no reason for this Court to adjust the arbitrator's proof of loss date. Thus, we hold the district court properly awarded attorney fees on Farmers' $155,000 payment.

Second, Farmers argues that Cedillo could not recover attorney fees on the prejudgment interest award because prejudgment interest is not "an amount justly due" under Idaho Code section 41-1839. Farmers argues that prejudgment interest is instead due pursuant to statute under Idaho Code section 28-22-104. Section 28-22-104 applies when there is no contract provision for interest. That statute provides that a 12% interest rate applies to "[m]oney after the same becomes due." Idaho Code section 41-1839 provides attorney fees for the recovery of "the amount that person is justly due under such policy . . . in any action thereafter commenced against the insurer in any court . . . , or in any arbitration for recovery under the terms of the policy, certificate or contract. . . ." Section 41-1839 also provides that the insurer will "pay such further amount as the court shall adjudge reasonable as attorney's fees in such action or arbitration."

Farmers' argument does not consider the part of section 41-1839 that provides the insurer will "pay such further amount as the court shall adjudge reasonable as attorney's fees in such

14

action or arbitration." Here, the district court included prejudgment interest in its attorney fees calculation because Cedillo's contingent fee agreement calculated attorney fees based on the total damages Cedillo recovered. While prejudgment interest is not specifically due under Cedillo's policy with Farmers, prejudgment interest became part of the total damages under the arbitrator's final award. Cedillo's fee agreement broadly allowed Steele to recover attorney fees for any damages recovered, which meant the district court could reasonably base attorney fees on that amount. Therefore, we hold the district court acted within its discretion by including prejudgment interest in the court's attorney fees award.

Third, Farmers argues it does not owe fees on the prejudgment interest accrued on unpaid balances that the arbitrator's errors created. Because we hold that the district court did not err in confirming the award, the fees based on that award are proper. However, Farmers also argues that even without any math errors, the district court erred in awarding fees on the balance Farmers still owed on November 22, 2013. Farmers argues the award was in error because Cedillo had already been awarded attorney fees on those amounts as she had already calculated other parts of her attorney fees based upon previous payments of the interim award and interest.

Farmers is essentially still arguing that it should only owe for the principal. Farmers could have avoided additional fees by paying the full amount due. Farmers paid $101,948 on September 11, 2013. This was the amount of the amended final award, which included the $100,333 in damages and $1,615 in interest. In her affidavit of costs, Cedillo stated that she applied that payment first to interest accrued and then to principal. This left a $5,608 balance on the damages and $132 of prejudgment interest accrued. The court entered its award based on these numbers. Farmers still had outstanding damages that Cedillo could recover, which meant that Cedillo could calculate her attorney fees based on them. Thus, the district court properly included the outstanding damages and interest as part of Cedillo's attorney fees.

## C. Cedillo is entitled to attorney fees on appeal.

Cedillo requests attorney fees on appeal under Idaho Code sections 41-1839 and 7-914. Cedillo is the prevailing party, so we must determine whether she is entitled to attorney fees under either statute. Idaho Code sections 41-1839 and 12-123 are the exclusive remedies for attorney fees in disputes arising out of insurance policies. I.C. § 41-1839(4); *Mortensen v. Stewart Title Guar. Co.*, 149 Idaho 437, 447, 235 P.3d 387, 397 (2010). Thus, section 7-914 does not apply.

Cedillo argues for fees under Idaho Code section 41-1839(1) because the district court awarded fees under that statute. When a party is entitled to an award of attorney fees under section 41-1839 in the trial court and she prevails on the appeal challenging the reasonableness of that award, she is also entitled to attorney fees on appeal. *Parsons v. Mut. of Enumclaw Ins. Co.*, 143 Idaho 743, 748, 152 P.3d 614, 619 (2007). Thus, we award Cedillo reasonable attorney fees and costs on appeal under section 41-1839.

## IV. CONCLUSION

We affirm the district court's order confirming the arbitration award. We also affirm the district court's award of attorney fees in the amount of $121,007.23. Attorney fees and costs on appeal to Cedillo.

Justices EISMANN, J. JONES, WALTERS, Pro Tem, KIDWELL, Pro Tem, **CONCUR.**